KENT PRESTON GILLEY,

v.                                                      No. ___
                                                       (Crim. Case No. 1:09-cr-45)[1]
UNITED STATES OF AMERICA                                Judge Mattice

## MEMORANDUM IN SUPPORT OF SECTION 2255 MOTION

Comes the movant, Kent Preston Gilley, by and through counsel, and hereby files this Memorandum in Support of his 28 U.S.C. Section 2255 Motion. Section 2255 provides an avenue for a federal prisoner to move to vacate or set aside a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. Section 2255(a). The constitutional violation in this case is that Mr. Gilley was denied the effective assistance of counsel under the Sixth Amendment. U.S. Const. amend. VI. The Sixth Amendment guarantees the accused in all criminal prosecutions the right to have the assistance of counsel, *Gideon v. Wainwright*, 372 U.S. 335 (1963), and this right is meaningless if that assistance is ineffective. *See, Strickland v. Washington,* 466 U.S. 701-703 (1984). Although the ultimate remedy being sought by Mr. Gilley under 28 U.S.C. Section 2255(b) is the granting of a new sentencing hearing, Mr. Gilley now moves the Court to grant him an evidentiary hearing on this section 2255 motion.

There is a one year statute of limitations for filing a section 2255 motion which begins to run from the date on which the judgment of conviction becomes final. 28 U.S.C.

_____

1 Unless otherwise noted, record citations ("R.") are to the criminal case, 1:09-cr-45.

1

Section 2255(f). The judgment of conviction in Mr. Gilley's case became final on November 15, 2011, the date time expired for Mr. Gilley to petition to the Supreme Court of the United States for certiorari, contesting the Court of Appeals affirmation of his sentence. *See, Clay v. United States*, 537 U.S. 522, 527 (2003). Therefore, his petition is timely filed.

The next requirement of section 2255 is that the movant be a "prisoner in custody under sentence of a court established by Act of Congress." 28 U.S.C. Section 2255(a). Mr. Gilley meets this requirement. He is serving a sentence of 125 months and is in the custody of the Bureau of Prisons at FCI Elkton in Elkton (Lisbon), Ohio.

A Section 2255 motion must be filed in the district court that imposed the sentence that is being challenged. 28 U.S.C. Section 2255(a). Mr. Gilley was indicted, pleaded guilty, and was sentenced in the United States District Court for the Eastern District of Tennessee at Chattanooga before Judge Harry S. Mattice, Jr. in case number 1:09-cr-45.

<u>STATEMENT OF THE CASE</u>

Kent Gilley was indicted on six counts of receipt of child pornography and one count of possession of child pornography, in violation of 18 U.S.C. Sections 2252A(a)(2)(A) and (b)(1) and (a)(5)(B) and (b)(2). (R. 3, Indictment.) June 2, 2009 he entered a guilty plea to Count One, one of the receiving counts (R. 16, Change of Plea Minutes), agreeing with the facts presented by the government (R. 29, Rearraignment Tr., pp 12-13). On October 26, 2009 received a sentencing guidelines range sentence of 125 months imprisonment and a lifetime term of supervised release. (R. 26, Judgment.) Mr. Gilley appealed, on the claims that both the sentence of 125 months imprisonment and the lifetime term of supervised release were unreasonable. (COA Case No. 09-6332, Brief of

Case 1:09-cr-00045-HSM-WBC   Document 36   Filed 11/07/12   Page 2 of 24   PageID #: 155

Appellant).  The Court of Appeals upheld the sentence as reasonable.  (R. 33, 8/15/11 Opinion of the Court of Appeals.)

## ISSUES

**I.  Trial counsel provided ineffective assistance at sentencing, warranting relief.**

A.  Counsel[2] failed to raise at least two sentencing guidelines issues, with the result that movant's advisory sentencing guideline range was higher than a correct calculation of the guidelines would have provided.  First, counsel failed to object to the presentence report failing to apply USSG Section 2G2.2(b)(1).  Second, at the sentencing hearing, counsel failed to object to the government's refusal to move the court for the third-offense level reduction available under USSG Section 3E1.1(b).

B.  Counsel failed to adequately investigate the facts of the offense and movant's individual characteristics.  Such investigation would have revealed significant mitigating facts that counsel would have then been able to present to the Court.

C.  Counsel failed to present to the Court, either in the sentencing memorandum or at the sentencing hearing, the mitigating facts relevant to 18 U.S.C. Section 3553(a) that would have justified a downward variance. Counsel's motion for a non-guidelines sentence, R. 21, failed to address significant facts relevant to, or to explain why those facts counsel did address were relevant to, imposition of an appropriate non-guidelines sentence under 18 U.S.C. Section 3553.

D.  Counsel failed to challenge the validity of the USSG Section 2G2.2 guideline in its application to Mr. Gilley.

E.  Counsel failed to object to the imposition of a lifetime term of supervised release, or to the wholesale imposition of all the special sex offender conditions of supervised release contained in Local Rule 83.10(b).

**II.  Appellate counsel provided ineffective assistance on appeal, warranting relief.**

A.  Counsel filed a brief devoid of facts and argument supporting either the procedural or the substantive unreasonableness of the sentence of imprisonment, and counsel cited no cases supporting movant's position that the sentence imposed was unreasonable.

B.  Counsel's brief was similarly devoid of argument or case law supporting movant's position that the lifetime term of supervised release was unreasonable.

---

2 References to "counsel," "trial counsel," or "appellate counsel" are to attorney Anthony Martinez of Federal Defender Services of Eastern Tennessee, Inc., who represented movant during the plea, sentencing, and appeal proceedings.

Case 1:09-cr-00045-HSM-WBC   Document 36   Filed 11/07/12   Page 3 of 24   PageID #: 156

<u>STANDARD OF REVIEW</u>

The United States Supreme Court established the test for analyzing a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See also, Stone v. United States*, 258 Fed. Appx. 784, 787 (6th Cir. 2007); *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005). The first prong of *Strickland* is the performance prong, where a petitioner must show that his or her attorney's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. An attorney's performance will be deemed deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Stone*, 258 Fed. Appx. at 787 (*quoting Strickland*, 466 U.S. at 687). "Reasonableness is measured against prevailing professional norms and must be viewed under the totality of the circumstances as they existed at the time." *Strickland,* 466 U.S. at 688. The second prong of *Strickland* is the prejudice prong, which requires a petitioner to demonstrate that there is a "reasonable probability that, *but for* counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 688. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

Mr. Gilley asserts he received the ineffective assistance of counsel during both the sentencing and appeal phases of his case. In evaluating a claim of ineffective assistance of appellate counsel, Mr. Gilley also relies of the *Strickland* standard. *See, Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005); *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

4

I.      **Trial counsel provided ineffective assistance at sentencing that warrants relief.**

     A.      **Counsel failed to raise at least two sentencing guidelines issues, with the result that movant's advisory sentencing guideline range was higher than a correct calculation of the guidelines would have provided. First, counsel failed to object to the presentence report failing to apply USSG Section 2G2.2(b)(1). Second, at the sentencing hearing, counsel failed to object to the government's refusal to move the court for the third-offense level reduction available under USSG Section 3E1.1(b).**

     Application of the specific offense characteristic found at USSG Section 2G2.2(b)(1) would have resulted in a two-offense level reduction. Section 2G2.2(b)(1) applies to defendants whose conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor and who did not intend to traffic in such material. A review of the Agreed Factual Basis, R. 17, and the presentence report, paragraphs 6 – 15, reveals that this reduction should have been applied to movant. Mr. Gilley clearly exhibited no intention of trafficking in the images he viewed. *See, United States v. Robinson*, 669 F.3d 767, 773 (6th Cir. 2012)(sentencing errors in the guideline calculations are procedurally unreasonable).

     USSG Section 3E1.1(b) provides, for an additional one-offense level reduction, "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently… ." Movant did, in fact, enter a timely plea of guilty, thereby permitting the government to avoid preparing for trial. When the presentence report subsequently applied the obstruction adjustment under USSG Section 3C1.1, paragraph 17, it concluded

Case 1:09-cr-00045-HSM-WBC    Document 36    Filed 11/07/12    Page 5 of 24    PageID #: 158

Mr. Gilley was not eligible for any reduction for acceptance of responsibility, USSG Section 3E1.1, paragraph 18. At the sentencing hearing the Court concluded the facts did not support application of the obstruction enhancement, and it thereupon re-instated the two-level reduction available under USSG Section 3E1.1(a). (R. 30, Sentencing Tr. pp 21-22.) The prosecution apparently recognized that it had no grounds under the Section 3E1.1(b) guideline for not similarly reinstating the third level reduction, noting, "Your Honor, it's really driven by the Court's finding on obstruction. I have no valid reason –" (Sentencing Tr., p. 22.) However, as the Court queried the prosecutor, the prosecutor decided he would not move for the third level reduction., saying, "In that case, we don't Your Honor." (Sentencing Tr., p. 23.) This decision by the prosecutor was clearly objectionable, but defense counsel said nothing. Once the Court granted the two-level reduction under USSG Section 3E1.1(a), there was no legitimate impediment to movant's receipt of the third level under Section 3E1.1(b). The Sixth Circuit has been clear that when a defendant takes some action (such as filing a motion to suppress, or even insisting on re-weighing drugs) that causes the government to engage in "trial-like" preparations, the government may withhold the motion for the third level. *See United States v. Collins*, 683 F.3d 697, 707-708 (6th Cir. 2012). But here, Mr. Gilley pleaded guilty in a timely manner and was forced to defend against an unwarranted obstruction of justice enhancement precipitated by the accusation of a family member. The inconvenience to the government was the result of forces beyond Mr. Gilley's control. A timely objection by defense counsel would have resulted in both the Court and the prosecutor re-thinking the terms of Section 3E1.1(b).

**B. Counsel failed to investigate adequately the facts of the offense and movant's individual characteristics. Such investigation would have revealed**

6

**significant mitigating facts that counsel would then have been able to present to the Court.**

Counsel failed to investigate the significant mitigating fact of the offense that movant had no knowledge that any images were being stored on the computers he utilized and that he believed he was viewing images, not receiving or storing them. The technology by which images were stored on the computer in movant's case was a mitigating fact counsel could easily have addressed, but instead totally ignored. "Caching," the automatic storing by a computer's operating system of information on a web page, is a built-in data management technique the average computer user, such as Mr. Gilley, would not have contemplated when he accessed computers at Erlanger Medical Center. The fact he was accessing the Internet through computers that he neither owned nor possessed, strongly supports the argument that he believed he was engaged in the transient viewing of material, and did not know the computer was saving any of it. *See, New York v. Kent*, 970 N.E.2d, 833, 836-841 (NY, 5/8/12) (explaining the significance of "caching" in distinguishing between *viewing* images, as Mr. Gilley thought he was doing, and *possessing* them.)

In a May 2010 interview, U.S. District Judge Jack B. Weinstein remarked of the sentencing guidelines' failure to adequately distinguish between those who have viewed child pornography and those who have produced or trafficked in it. Of those who viewed it, and did not produce or sell it, Judge Weinstein said, "We're destroying lives unnecessarily…. At the most, they should be receiving treatment and supervision." "Defiant Judge Takes on Child Pornography Law," A.G. Sulzberger, *The New York Times*, May 21, 2010.

In preparation for the sentencing counsel failed to obtain a psycho-sexual evaluation of movant, which could have established movant was not a danger. Nor did counsel obtain a local psychological evaluation, which would have provided the Court with documentation of important mitigation (such as the impact of movant's having been victimized as a child, which counsel referenced in the sentencing memorandum, R. 21, p. 3). Particularly in view of the fact movant was on bail prior to entry of his guilty plea, counsel should have arranged for evaluation and counseling, to support the argument that the goals of sentencing embodied in Section 3553(a)(2) supported a below guidelines sentence.

Section 3553(a)(2)(C) and (D) address individual offender characteristics that make a defendant more or less of a danger and more or less amenable to treatment. At sentencing the Court inquired and Mr. Gilley expressed a desire for treatment. (Sentencing Tr. pp. 35-36.) But counsel had already squandered its opportunity to have Mr. Gilley evaluated and treated during the two months between his being placed on bail and his entering a guilty plea. Whatever else a psychological evaluation would have shown, Mr. Gilley's undergoing it would have demonstrated his sincerity in dealing with and overcoming his emotional problems. Even after he was taken into custody, counsel could have had Mr. Gilley undergo a limited evaluation, which would have been helpful to the Court in performing the individualized risk assessment required by (a)(2)(C), and the individualized treatment assessment required by (a)(2)(D).

Additionally, neither in the sentencing memorandum nor at the sentencing hearing did counsel develop any evidence to support his assertion that movant was at special risk in a prison setting, either as a result of his law enforcement background, or as a result of

8

his likely prison designation as a child victimizer, or a combination of both. The Court expressed an interest in receiving evidence on the dangers associated with being incarcerated as a former law enforcement officer convicted of a child pornography offense. (Sentencing Tr., pp. 32-34.) Counsel, having raised the question, had done no research on it and could give the Court no answers. Nor did counsel request a continuance in order to obtain the information. If counsel found the Bureau of Prisons was not forthcoming on the rates of injury experienced by former law enforcement inmates or inmates convicted of child pornography offenses, counsel could still have found anecdotal news accounts on the experiences of such inmates. *See, e.g., In Federal Prison, Baltimore Cops Get No Breaks," articles.baltimoresun.com/2012-08-19/news/bs-md-officers-in-prison; When Cops Go to Jail, Chicago Sun Times, www.suntimes.com/news/metro/3430932pedersen-prison-burge.* Alternatively, counsel could have researched the Bureau of Prisons' designation procedures, and could have educated the Court on the punitive results of the Bureau's method of protecting former law enforcement inmates.

**C.     Counsel failed to present to the Court, either in the sentencing memorandum or at the sentencing hearing, the mitigating facts relevant to 18 U.S.C. Section 3553(a) that would have justified a downward variance. Counsel's motion for a non-guidelines sentence, R. 21, failed to address significant facts relevant to, or to explain why those facts it did address were relevant to, imposition of an appropriate non-guidelines sentence under 18 U.S.C. Section 3553.**

Counsel's written motion for non-guidelines sentence, R. 21, failed to provide the sentencing court with any objective basis for a sentence below the advisory guideline range under Section 3553(a). Counsel asserted movant had been abused as a child, but offered no evidence of the abuse and no explanation of why his abuse as a child was grounds for a below-guidelines sentence. Counsel described movant's history of

9

employment as a police officer but offered no explanation in the sentencing memorandum as to why movant's prior employment history was grounds for a below-guidelines sentence. Counsel failed to address the mitigating facts about his specific offense that diminished movant's culpability when compared to other defendants convicted of the same type of crime. The fact that movant utilized a computer to which he had only brief access demonstrated the fact that he was unaware that he "possessed" any images, and the fact that even in the tenuous sense in which he did "possess" the images, that possession was fleeting because his access to and control over the computer was so brief, demonstrate that the heart of Mr. Gilley's behavior was viewing pornography, not possessing or receiving it. *See, New York v. Kent*, 970 N.E.2d, 833, 836-841 (Ct.Appeals, 5/8/12) (examining the distinction between viewing and possessing and concluding Kent was not guilty of the New York crime encompassing possession of child pornography). Counsel failed to address the fact that movant's offense involved a computer to which he had such limited access – it was not even a computer he was assigned at work – and that fact diminished the significance of deterrence as a sentencing consideration. And as noted earlier, counsel failed to develop facts about movant himself that would have demonstrated to the Court that incapacitation was not a significant sentencing consideration, and rehabilitation within the community was a viable, and even preferable, sentencing alternative. *See, Tapia v. United States*, 131 S.Ct. 2382, 2392 (2011). (Even the Factual Basis, R. 17, and the presentence report reflected a very unsophisticated and short-lived offense.) Counsel's failure to investigate and present mitigation constitutes ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984); *Chamber v. Armontrout*, 907 F.2d 825, 828-31 (8th Cir. 1990).

**D.    Counsel failed to challenge the validity of the USSG Section 2G2.2 guideline in its application to Mr. Gilley.**

At the time of Mr. Gilley's sentencing, arguments regarding the inadequacies of USSG Section 2G2.2 were widely known among attorneys, and among the Federal Defender community in particular.  Cases had been decided, including at least one case in the Eastern District of Tennessee at Chattanooga, *United States v. McElheney*, 630 F.Supp.2d 886 (2009), finding Section 2G2.2 to be unduly harsh.  Yet, counsel did not develop any argument or evidence that USSG Section 2G2.2, the guideline under which his advisory guidelines were calculated, did not represent the institutional strengths of the Sentencing Commission and should not be accorded the deference sentencing courts normally give the Sentencing Commission's advisory guidelines, or that USSG Section 2G2.2 provided for a substantially harsher sentence than was necessary to achieve the purposes of sentencing in movant's case, given the facts of his offense and his personal characteristics.

### *Guideline Section 2G2.2 is not due the deference generally accorded the advisory sentencing guidelines.*

Among the primary reasons Congress established the Sentencing Commission were to achieve the sentencing goals set out in Section 3553(a)(2) and to provide certainty and fairness and avoid unwarranted disparities in sentences.  28 U.S.C. Section 991(b).  *See also, Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 574 (2007).  Sentencing Guideline Section 2G2.2, one of the child pornography guidelines, was not produced by the Sentencing Commission operating in accordance with its original Congressional design.  Section 2G2.2 is not a product of the Commission's experts collecting and analyzing empirical evidence and then formulating offense characteristics based upon

11

sound research and sentencing practice. *See, United States v. Stern*, 590 F.Supp. 2d 945, 960 (N.D. Ohio 2008). Instead, 2G2.2 is largely the product of congressional action. *See, The History of the Child Pornography Guidelines*, pp. 8-53, United States Sentencing Commission (Oct. 2009).

In "Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines," (Jan. 1, 2009) (http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf), author Troy Stabenow details the development of the child pornography guidelines. The original child pornography guideline had a base offense level of 13 and enhancements for age of the victim and number of images distributed. *Id.* at 3-4. In 1990 Congress made possession of child pornography a crime and directed the Commission to increase the sentencing guideline penalties. *Id.* When the Commission attempted to create separate guidelines for receipt and distribution, Congress intervened. *Id.* at 6-9. Then in 1995 Congress directed the Commission to increase the base offense level and add an enhancement for use of a computer. *Id.* at 9-12. (According to Stabenow, Congressional debate focused on child pornography producers and distributors, but the result was enhanced sentencing guidelines for all child pornography cases. *Id.* at 11.) The revised guideline applied both to people who traffick in child pornography and to people who receive child pornography. *Id.* at 9. Congress's continued intervention resulted in additional enhancements, applied across the board to both traffickers and possessors. *See also, The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric*, 72 Stan.L. & Pol'y Rev. 545, 569-72 (2011).

Where, as with USSG Section 2G2.2, a guideline does not reflect the institutional strengths of the Sentencing Commission, the district court is justified in giving USSG Section 2G2.2 less weight, because the guideline is not the product of empirical analysis. *United States v. Phinney*, 599 F.Supp.2d 1037, 1040 (E.D.Wisc. 2009). *See also United States v. Beirmann*, 599 F.Supp. 2d 1087, 1100-04 (N.D. Iowa 2009); and *Spears v. United States,* 129 S.Ct. 840, 843-44(2009), *Kimbrough v. United States*, 128 S.Ct.558, 574-75 2007).

What the history of Congress' intervention in the development of USSG Section 2G2.2 demonstrates, is that a fundamental principle of the Sentencing Reform Act of 1984, that similar offenses be treated similarly and dissimilar offenses be treated differently, was lost when it came to distinguishing among different types of child pornography offenses. Congress' intervention in the work of the Sentencing Commission resulted not only in an overall increase in the guideline offense levels pertaining to child pornography, but also in the child pornography guidelines largely ignoring the distinction between a serious crime, receiving child pornography, and a *very* serious crime, trafficking in child pornography. *See, Fifteen Years of Guidelines Sentencing*, pp. 72-73, United States Sentencing Commission (Nov. 2004), the Commission noted, "The frequent mandatory minimum legislation and specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." *Id.* (*Available at* http://www.ussc.gov.)

Sentencing courts have frequently imposed non-guidelines sentences in child pornography cases. The Sentencing Commission's reports for Section 2G2.2 sentences

Case 1:09-cr-00045-HSM-WBC   Document 36   Filed 11/07/12   Page 13 of 24   PageID #: 166

imposed in the Sixth Circuit in 2007 – 2009 show the following: in 2007, 37.7 percent of 2G2.2 sentences were below the guideline minimum; in 2008, 44.0 percent were below the guideline minimum; in 2009, 50.8 percent were below the guideline minimum. United States Sentencing Commission Data File OPAFY2007 – OPAFY2009. *The same information should be available at* http://www.ussc.gov. *See also, United States v. McElheney*, 630 F.Supp.2d 886, 894-95 (2009) (noting that over half of child pornography sentences are below guidelines.) Clearly, USSG Section 2G2.2 is not descriptive of what is going on at sentencing in child pornography cases, and many judges in the Sixth Circuit have found that the non-mandatory Section 2G2.2 guideline fails to address the mandatory purposes of individualized sentencing set forth in 18 U.S.C. Section 3553(a)(2).

All of the information cited above was available to counsel at the time of Mr. Gilley's October 26, 2009 sentencing. For purposes of sentencing Mr. Gilley, the Court need not have decided whether USSG Section 2G2.2 was fatally flawed. The Court was faced only with the question of whether Section 2G2.2 failed to capture the purposes of sentencing expressed in 18 U.S.C. Section 3553(a)(2) as to movant Kent Gilley.

As the Sixth Circuit noted in *United States v. McNerney*, Congress had the authority to do what it did when it had intervened in the Sentencing Commission's development of the child pornography guidelines. 636 F.3d 772, 778 (6th Cir., 2011) However, the result of the Congressional intervention in USSG Section 2G2.2 is that sentencing judges cannot rely on the child pornography guideline to provide the well-reasoned guidance from the Sentencing Commission that Congress itself intended when it established the Commission, 28 U.S.C. Sections 994-95. It is not that Congress was not free to intervene in the Sentencing Commission's formulation of the guideline. *See,*

*United States v. Bistline*, 665 F.3d 758, 762 (6th Cir., 2012). It is that by doing so, Congress has made the Sentencing Guidelines less helpful to sentencing courts, who are still charged by 18 U.S.C. Section 3553(a) with imposing individualized sentences. The Sixth Circuit Court of Appeals upholds significant downward variances when they are based on individualized considerations of the section 3553(a) factors. *See, e.g., United States v. Stall*, 581 F.3d 276 (6th Cir. 2009); and *United States v. Presel*, 316 Fed. Appx. 377 (6th Cir. 2008).

### *Section 3553(a) considerations as applied to Kent Gilley*

In imposing sentence, the court is guided by the Section 3553(a) factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
　　　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
　　　(B) to afford adequate deterrence to criminal conduct;
　　　(C) to protect the public from further crimes of the defendant; and
　　　(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the advisory guideline range;
(5) any pertinent policy statements issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities;
(7) the need to provide restitution to any victims of the offense.

The statute requires that the sentence imposed be sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**(1) Nature of the Offense, Character of the Defendant.**

### *Nature of the Offense.*

As noted earlier, Kent Gilley's offense consisted of his viewing images on a computer over which he had very limited control. He did not knowingly store the images,

15

although the computer did, in fact, maintain the record of its having received the images. Mr. Gilley did not trade or share images. He viewed them. *See,* Agreed Factual Basis, R. 17.

   *Kent Gilley's Personal Background and Distinctive Characteristics.*

   Not only did counsel fail to investigate and present mitigation, including the emotional trauma he suffered as a young person and his desire for mental health treatment, but counsel also failed to object to the unsubstantiated allegations in paragraphs 15 and 36 of the presentence report that movant had engaged in deviant behavior on other occasions. Had counsel voiced this objection and reminded the Court that it could only utilize reliable evidence in its sentencing determination, the Court would undoubtedly have assured the defense that it would not rely on these unsubstantiated allegations. By failing to object, counsel tacitly accepted their accuracy. *See,* Rule 32(i)(3)(A) (court may accept any undisputed portion of the presentence report as a finding of fact).

 **(2) The Purposes of Sentencing.**

   18 U.S.C. § 3553(a)(2)(A) and (B). Counsel failed to direct the Court's attention to the fact that, as the statutory minimum, sixty months reflects Congress' estimate of the appropriate sentence in the least aggravated of distribution or receipt of child pornography offenses. Similarly, counsel failed to express the truth that the sixty month statutory minimum mandatory represents the sentence at which Congress anticipates the goal of deterrence will be achieved.

   18 U.S.C. § 3553(a)(2)(C). Equally as significant, counsel failed to provide the Court with the information it needed to impose a sentence based upon an individualized consideration of the sentencing factors described in (a)(2)(C) and (a)(2)(D). As noted

earlier, counsel failed to provide the Court with the individualized information that would have enabled the Court to reach this conclusion. Counsel had ample time to develop this individualized information for the Court, but failed to do so. If granted a re-sentencing hearing, Mr. Gilley will ask for the opportunity to make his mitigation case.

Even without information particular to Mr. Gilley, statistical information exists which the defense could have provided the Court to demonstrate that Mr. Gilley is not a danger. The Sentencing Commission noted in *Measuring Recidivism: The Criminal History Component of the Federal Sentencing Guidelines* (May 2004), that defendants with no criminal history points, some college, and a history of employment have low recidivism rates. *Id.* at 6, 12.

Establishing that Mr. Gilley is not a risk for recidivism was important at sentencing, both to demonstrate there was no need for imposition of a lengthy term of imprisonment, but also to demonstrate there was no need for a lifetime term of supervised release. The standard statutory term of supervised release for a Class C felony is not more than 3 years. 3583(b). The child pornography statute carries a minimum mandatory term of supervised release of 5 years, but a maximum of Life. A potential sentence of a Life term of supervised release cried out for individualized consideration and counsel had an obligation to present individualized and accurate information on the degree of risk movant posed, as well as the nature of his need for treatment.

18 U.S.C. Section 3553(a)(2)(D). Kent Gilley said he would benefit from counseling. However, there is no basis for incarcerating him for correctional or treatment purposes. *See*, 18 U.S.C. Section 3582(a)("imprisonment is not an appropriate means of

promoting correction and rehabilitation"). *See also, Tapia v. United States*, 131 S.Ct. 2382, 2392 (2011).

**(4) The advisory guideline range; (5)  Sentencing policy and fashioning an appropriate sentence;  and (6)  The need to avoid unwarranted sentencing disparity.**

Counsel failed to bring to the Court's attention not only to particular facts of the offense and offender that were mitigating, but also to the inherent weaknesses of the USSG Section 2G2.2 guideline, and to the sentences in other cases that would demonstrate that a guidelines range sentence for Mr. Gilley would be disproportionately punitive. Representative cases could have included:  *United States v. Jon Hanson*, 2008 WL 2486336 (E.D.Wisconsin) (a sentence of 72 months, in the face of a guideline range of 210-262 months); *United States v. Jose Ontiveros*, 2008 WL 2937539 (E.D.Wis.) (where the court dropped from a Section 2G2.2 range of 97-121 months, to impose a sentence of 60 months); *United States v. David Grober*, 595 F.Supp.2d 382 (D.N.J. 2008), ( a sentence of 60 months, in the face of a guideline range of 292-365 months); *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) (where the Court of Appeals reversed a sentence imposed under USSG Section 2G2.2, stating the guideline was "seriously flawed" and the sentence was substantively unreasonable.  *Id.* at 184); *United States v. Tutty*, 612 F.3d 128 (2d Cir. 2010)(remanded under circumstances similar to Dorvee's); *United States v. Grossman,* 513 F.3d 592 (6th Cir. 2008)(upholding a downward variance from a range of 135-168 months to a sentence of 66 months; *United States v. Phillip Allen Shipley*, 560 F.Supp.2d 739 (S.D. Iowa, 2008) (imposing a sentence of 90 months, in the face of a range of 210-240 months).

USSG Section 2G2.2 fails to distinguish between the most serious types of child pornography offenses and the lesser child pornography offenses.  Because child sex abuse

Case 1:09-cr-00045-HSM-WBC  Document 36  Filed 11/07/12  Page 18 of 24  PageID #: 171

is such a serious crime, it provokes strong emotions against the perpetrators. However, punishing those who have viewed child pornography almost as severely as those who have produced or sold it is an illogical conflation of two different crimes. *See, Disentangling Child Pornography from Child Sex Abuse*, Carissa Byrne Hessick, Washington University Law Review, Vol. 88 (2010).

**E.  Counsel failed to object to the imposition of a lifetime term of supervised release, or to the wholesale imposition of all the special sex offender conditions of supervised release contained in Local Rule 83.10(b).**

Counsel should have provided the Court with applicable case law demonstrating that the sentencing court is required to decide the length of the term of supervision and the conditions of supervision based upon the court's consideration of the individual circumstances of the defendant, as reflected in 18 U.S.C. Section 3553(a). Without being advised of the necessity of individualized consideration of the appropriate term of supervised release for Mr. Gilley, and of which particular special conditions contained in Local Rule 83.10(b) were necessary to supervise Mr. Gilley, the Court accepted the suggestion that wholesale application of the harshest terms of supervision was appropriate. Not only did counsel fail to object to the possibility of imposition of a lifetime term of supervised release reflected in the presentence report, but counsel failed to object at the sentencing hearing, thus waiving the issue and relegating it to plain error review on appeal.

Examination of the special conditions of supervision contained in Local Rule 83.10(b), in light of Mr. Gilley's personal characteristics, would have revealed that not all of the conditions were necessary or desirable. Local Rule 83.10(b) lists twelve extremely onerous conditions. Condition (1) of Rule 83.10(b), for example, requires the defendant to

participate in sex offender mental health treatment at his own expense and to waive his confidentiality rights. Such a waiver is inherently destructive of the quality of treatment, as it turns the therapist into an agent for law enforcement. Condition (3) includes the prohibition of the defendant's visiting any place where children congregate or any business that targets child customers. Condition (10) requires him to submit to warrantless searches. Counsel should have objected to the imposition of any special condition absent the government's establishing the necessity of such condition.

At Mr. Gilley's sentencing hearing the court imposed all of the conditions contained in Local Rule 83.10(b), not by listing them individually, but by alluding to Rule 83.10(b). (R.30, Sentencing Tr., pp. 38-39). When the court asked if any of the parties had additional objections not previously raised, defense counsel made no objection to the term of supervision or the special conditions.

Even in a "sex offender" case the sentencing court must tailor the conditions of supervision to the individual defendant and must provide an explanation for the conditions it imposes. A condition of supervised release must be reasonably related to rehabilitation of the defendant and protecting the public from the defendant, and involve no greater deprivation of liberty than is reasonably necessary to accomplish the statutory purposes of supervised release. *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012), which clearly enunciated this position, followed appellate counsel's filing of the brief, but *Inman* relied on earlier cases that were available to counsel. *See, United States v. Kennedy*, 499 F.3d 547, 549-553 (6 th Cir. 2007); *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997).

II.     **Appellate counsel provided ineffective assistance that warrants relief.**

   A.    **Counsel filed a brief devoid of argument supporting either the procedural or the substantive unreasonableness of the sentence of imprisonment. Counsel cited no cases supporting movant's position that the sentence imposed was unreasonable.**

   B.    **Counsel's brief was similarly devoid of argument or case law supporting movant's position that the lifetime term of supervised release was unreasonable.**

Appellate counsel did raise the substantive unreasonableness of a 125 month sentence as an issue, although he provided no support. Counsel did *not* raise the issue of the procedural unreasonableness of a sentence reflecting an inaccurate calculation of the sentencing guidelines. *See, United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). As is apparent from the law and argument presented in this Memorandum as to Ground I, appellate counsel had ample grounds with which he could have mounted a successful challenge to the sentence, but he failed even to attempt to do so.

Where the district court does not explain its reasons for imposing particular conditions and those reasons are not clear from the record, the Court of Appeals cannot review for reasonableness, and must remand. *Id. See also, United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012) (remanding even on plain error review, where the sentencing court did not provide reasons for a term of supervision of Life or explain the reasons for the special sex offender conditions it imposed); *United States v.Lanz*, 2011 WL 5839650, 443 Fed. Appx. 135 (6th Cir. 2011). An argument for the need to revisit the imposition of Lifetime supervision and the conditions of release would have been compelling, even if raised only for plain error review.

Appellate counsel prepared what was in essence an *Anders* brief. But because counsel did not label and file it as an *Anders* brief, movant was denied the protective

procedure the Court of Appeals accords *Anders* briefs. *See, Anders v. California*, 386 U.S. 738 (1967) and Sixth Circuit Rule 101(f)(3).

Counsel raised the issue of whether the district court erred by imposing a lifetime term of supervised release but, as with the argument regarding the reasonableness of the prison term, counsel presented no facts and no legal argument to support the position that imposition of a lifetime term of supervised release was both procedurally and substantively unreasonable.

CONCLUSION

Mr. Gilley asks that the Court grant him a hearing on his 28 U.S.C. Section 2255 motion. Mr. Gilley submits that based on the information provided in his motion, this memorandum, and at the evidentiary hearing, the Court will find that he received the ineffective assistance of counsel. Counsel failed to present the compelling facts, law, and arguments that were available to him, which would have established the need for a below-guidelines term of imprisonment and a below lifetime term of supervised release. His attorney's deficient performance was so serious that it did not constitute the "counsel" guaranteed the defendant by the Sixth Amendment. *See, Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, Mr. Gilley has established the "reasonable probability that, *but for* counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 688. The Court should grant Mr. Gilley a new sentencing hearing, and should re-sentence him.

Respectfully submitted,

s/ Leslie A. Cory
**ORTWEIN & CORY, LLC**
**Leslie A. Cory, BPR No. 022055**
Attorney for Defendant

22

1010 Market Street, Park Plaza, Suite 306
Chattanooga, Tennessee  37402
Office:  423-756-9242, Fax:  423-265-0903


s/ Martin J. Levitt (with permission)
**Martin J. Levitt, BPR No. 004229**
Attorney for Defendant
312 Vine Street, Chattanooga, Tennessee  37403
Office:  423-266-7555, Fax:  423-266-8342

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/ Leslie A. Cory
Leslie A. Cory, BPR No. 022055
1010 Market Street, Park Plaza, Suite 306
Chattanooga, Tennessee 37402
Office: 423-756-9242, Fax: 423-265-0903